UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRANDI A. BUKOWSKI,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

Case No. 13-cv-12040
Honorable Laurie J. Michelson
Magistrate Judge R. Steven Whalen

**OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [26], DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [14], AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [19]**

This matter is before the Court on Magistrate Judge R. Steven Whalen's Report and Recommendation (Dkt. 26), recommending that Defendant Commissioner's Motion for Summary Judgment (Dkt. 19) be granted and that Plaintiff Brandi Bukowski's Motion for Summary Judgment (Dkt. 14) be denied. Bukowski timely filed objections to the Report and Recommendation. (Dkt. 29.) The Commissioner did not file a response to her objections. The Court has carefully reviewed Magistrate Judge Whalen's Report and Recommendation and Plaintiff's objections thereto. For the reasons set forth below, Plaintiff's objections are OVERRULED, the Magistrate Judge's recommendation is ACCEPTED, and the Report is ADOPTED IN PART.

**I.  BACKGROUND**

The factual background of Bukowski's social security claim is set forth in detail in the Report. Neither party has objected to these findings of fact, and the Court hereby adopts them as

its findings. For present purposes, however, a brief outline of the procedural history of the case is useful.

Bukowski sought Disability Insurance Benefits and Supplemental Social Security Income as a result of her bipolar disorder, anxiety, Attention Deficit Disorder ("ADD"), hyperthyroidism, kidney disease, and back pain. After an initial denial of her July 14, 2010 application, Bukowski requested an administrative hearing. On September 6, 2011, Administrative Law Judge ("ALJ") Ronald Herman found that Bukowski was not disabled. The Appeals Council denied review of this decision on April 9, 2013. Bukowski filed for judicial review on May 8, 2013. Both Bukowski and the Commissioner filed motions for summary judgment which were referred to Magistrate Judge Whalen for a recommended disposition.

Magistrate Judge Whalen recommends that the Court grant the Commissioner's summary-judgment motion and deny Bukowski's. (Dkt. 26, R&R.) Bukowski has filed two objections to the Report: first, that the Magistrate Judge effectively performed a de novo review of the administrative record to support the ALJ's third step findings, which are otherwise inadequate, and second, that the ALJ and the Magistrate Judge improperly applied the legal standard for medical equivalency findings. (Dkt. 29, Pl.'s Objs.) The Commissioner has not filed a response to Bukowski's objections and the time to do so has passed.

## II.  STANDARD OF REVIEW

This Court performs a de novo review of those portions of Magistrate Judge Whalen's Report and Recommendation to which Bukowski has objected. 28 U.S.C. § 636(b). The Court need not and does not perform a de novo review of the report's unobjected-to findings. *Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Garrison v. Equifax Info. Servs., LLC*, No. 10-cv-13990, 2012

WL 1278044, at *8 (E.D. Mich. Apr. 16, 2012) ("The Court is not obligated to review the portions of the report to which no objection was made." (citing *Arn*, 474 U.S. at 149–52)).

"This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citation omitted). "The substantial evidence standard is met if a reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (citation and internal quotation marks omitted); *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (explaining that substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."). Under this standard, the Court affirms the ALJ's decision if it is supported by substantial evidence even if the evidence could support a different conclusion. *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).

### III. ANALYSIS

Both of Bukowski's objections concern the ALJ's Step Three findings on medical equivalence. Step Three requires that the ALJ determine whether a claimant's impairments meet or medically equal one of the entries in the Listing of Impairments, 20 C.F.R. Part 404, Subpart B, Appendix 1. If the ALJ determines that the impairments meet or equal one of the Listed Impairments, the claimant will be deemed "disabled." 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. § 404.920(a)(4). "A disability may be established by a claimant suffering from a variety of medical problems, no one of which might be sufficiently disabling to prevent substantial gainful

employment, but when taken together, have that result." *Tucker v. Heckler*, 782 F.2d 1043 (6th Cir. 1985) (citing *Hurst v. Schweiker*, 725 F.2d 53, 55–56 (6th Cir. 1984)).

### A. The ALJ adequately articulated his Step Three findings.

Bukowski's first objection concerns the ALJ's explanation of his Step Three findings. (Pl.'s Obj. at 3.) She argues that the ALJ failed to articulate the reasoning behind his Step Three conclusion that "the combination of her impairments do not meet or equal a listing" in 20 C.F.R. Part 404, Subpart B, Appendix 1 and that the Magistrate Judge improperly "attempt[ed] to rehabilitate the ALJ's decision" based upon "an analysis which the ALJ did not perform." (*Id.* at 3.) The Court finds that the ALJ sufficiently articulated his Step Three findings under Sixth Circuit precedent.

In support of her argument, Bukowski cites *Reynolds v. Commissioner of Social Security*, 424 F. App'x 411 (6th Cir. 2011). In that case, the Sixth Circuit reversed and remanded a determination that the claimant was not entitled to social security benefits because "the ALJ entirely failed to analyze whether the claimant's physical impairments met or equaled a Listed Impairment . . . ." *Id.* at 413. The claimant suffered from physical impairments and a psychiatric impairment, an adjustment disorder. *Id.* at 415. After performing a permissible Step Three analysis as to the psychiatric impairment only, "the ALJ simply went on to the next step in the 5– step analysis—determining residual functional capacity. No analysis whatsoever was done as to whether Reynolds' *physical* impairments . . . . met or equaled a Listing under section 1.00, despite his introduction concluding that they did not." *Id.* The Court explained that "in order to facilitate meaningful judicial review," the ALJ needed to provide an "explained conclusion" regarding the equivalency finding for the physical impairments. *Id.* at 416 (emphasis added). Because the ALJ "skipped an entire step of the necessary analysis," *id.*, there was nothing for the

4

Court to review and it was necessary to remand to allow the ALJ to complete the five-step analysis with respect to the physical impairments. *Id.* at 419.

This case is nothing like *Reynolds*. Not only did the ALJ not skip the Step Three analysis, his Step Three explanation is adequate under Sixth Circuit precedent. The ALJ specifically articulated his findings on Listed Impairments 6.02 (Impairment of Renal Function); 9.00 (Endocrine Disorders); 12.04 (Affective Disorder); and 12.05 (Mental Retardation). (Tr. 23–26.) And the ALJ's opinion reflects his consideration of both Bukowski's psychiatric and physical symptoms as well as the combined effect of those symptoms; for example, the ALJ's analysis acknowledged Bukowski's physical symptoms of nausea and dizziness alongside her psychiatric impairments. (Tr. 24.) Further, the ALJ considered the kidney disease as an alleged stressor for Plaintiff (albeit in the context of Step Four) and concluded that "[t]he medical evidence of record reveals that the claimant does better when she is following prescribed treatment." (Tr. 25–26.) And he also explained that "[t]he claimant has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (Tr. 27.)

That the ALJ performed some of this analysis in a different section of his opinion does not render his Step-Three findings inadequate. *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) ("The ALJ did not err by not spelling out every consideration that went into the step three determination. . . . The ALJ described evidence pertaining to all impairments, both severe and non-severe, for five pages earlier in his opinion and made factual findings. The ALJ explicitly stated that he considered the combination of all impairments even though he did not spell out every fact a second time under the step three analysis."). Since *Bledsoe*, district courts in this circuit have consistently found that an ALJ is "under no obligation to spell out 'every

5

consideration that went into the step three determination' or 'the weight he gave each factor in his step three analysis,' or to discuss every single impairment." *Staggs v. Astrue*, No. 2:09-CV-00097, 2011 WL 3444014, at *3 (M.D. Tenn. Aug. 8, 2011) (adopting report and recommendation) (quoting *Bledsoe*, 165 F. App'x at 411); *see also Roberts v. Comm'n of Soc. Sec.*, 12-14661, 2013 WL 6062018, at *12 (Grand, M.J.), *report and recommendation adopted*, 2013 WL 6062018 (E.D. Mich. Nov. 18, 2013) (Roberts, J.); *Andrews v. Comm'r of Soc. Sec. Admin.*, No. 12-13111, 2013 WL 2200393, at *12 (Grand, M.J.), *report and recommendation adopted*, 2013 WL 2200393 (E.D. Mich. May 20, 2013) (Cohn, J.).

The Court concludes that the ALJ's findings on the combination of Bukowski's impairments were sufficiently articulated as to facilitate meaningful judicial review.

### B. The lack of a medical opinion on the equivalency of Bukowski's combined impairments is harmless and does not warrant remand.

Bukowski's second objection is that the Magistrate Judge did not properly apply the legal standard on medical equivalence. (Pl.'s Obj. at 3.) She argues that the administrative record does not include any medical opinion on whether her combined impairments are medically equal to any listed impairment, including "Listed Impairment 12.05(c) for intellectual impairments or 6.02 for kidney impairments." (*Id.* at 4.) She asks the Court to remand so that the ALJ may "properly develop the record to include a medical opinion if Ms. Bukowski's medical impairment and symptoms are equivalent to any Listed Impairment, including 12.05(c) and 6.02." (*Id.* at 4.) While the Court finds that the ALJ's failure to adduce a medical opinion on Bukowski's combined physical and mental impairments was error, the Court will not remand because the error was ultimately harmless.

The claimant bears the Step Three burden of showing that her impairments are equal to one of the Listed Impairments. *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th

6

Cir. 1987). In general, however, "the opinion of a medical expert is required before a determination of medical equivalence is made." *Retka v. Comm'r of Soc. Sec.*, 70 F.3d 1272 (6th Cir. 1995) (citing 20 C.F.R. § 416.926(b)). Social Security Ruling 96-6P clarifies that "longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence . . . must be received into the record as expert opinion evidence and given appropriate weight." SSR 96-6P, 1996 WL 374180, at *3 (July 2, 1996). The ruling further advises the courts on what constitutes medical opinion evidence on equivalence:

> The signature of a State agency medical or psychological consultant on an SSA–831–U5 (Disability Determination and Transmittal Form) or SSA–832–U5 or SSA–833–U5 (Cessation or Continuance of Disability or Blindness) ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review. Other documents, including the Psychiatric Review Technique Form and various other documents on which medical and psychological consultants may record their findings, may also ensure that this opinion has been obtained at the first two levels of administrative review.

*Id.* at 3.

Moreover, findings by a Single Decision Makers ("SDM") do not constitute medical opinion evidence. *Fowler v. Comm'r of Soc. Sec.*, No. 12-12637, 2013 WL 5372883 (Hluchaniuk, M.J.), *report and recommendation adopted*, 2013 WL 5372883, at *4 (E.D. Mich. Sept. 25, 2013) (Berg, J.) (overruling objection to report and recommendation finding the same). Finally, where a claimant has both psychiatric and physical impairments, a medical opinion solely on psychiatric impairments will not suffice to inform the equivalence analysis of physical impairments, or the combination of physical and psychiatric impairments. *Trainor v. Commissioner of Social Security*, No. 13-10093, 2014 WL 988993, at *23 (Michelson, M.J.), *report and recommendation adopted*, 2014 WL 988993 (E.D. Mich. Mar. 13, 2014) (Berg, J.).

In general, a reviewing court will remand if the administrative record contains "no equivalence opinion whatsoever." *Moran v. Comm'r of Soc. Sec.*, No. 13-cv-13452, 2014 WL 4197366, at *25 (Morris, M.J.) (collecting cases), *report and recommendation adopted*, 2014 WL 4197366 (E.D. Mich. Aug. 22, 2014) (Hood, J.). Thus, for example, in *Trainor*, the court remanded because the administrative record did not "contain a medical expert's opinion on whether the combination of Trainor's mental *and physical impairments* are equal to any listed impairment." 2014 WL 988993, at *23. The court was not "comfortable analyzing equivalence in the first instance" because the administrative record indicated that the claimant had "significant physical impairments that might equal a listing." *Id.* at *25.

As hinted at in *Trainor*, however, the lack of a medical opinion on equivalence can be deemed harmless error in some cases. In *Rabbers v. Commissioner of Social Security Administration*, 582 F.3d 647, 654 (6th Cir. 2009), the Court examined whether the ALJ had applied and properly documented the "special technique" to evaluate the severity of Rabbers' mental impairment with respect to the "B criteria" of the Affective and/or Personality Disorders listings, as required by administrative regulations. *Id.* at 652. The Commissioner conceded that the ALJ's analysis was insufficient under the regulations, but argued that "[h]ad the ALJ made the required findings . . . he still would have concluded at step three that Rabbers's symptoms were not of listing-level severity, and therefore the error was harmless." *Id.* at 654.

The Court concluded that the "special technique," which was adopted with the goal of organizing the analysis and determining any possible need for additional information, was "worded in terms of the procedure's benefit to the SSA, not the claimant," and therefore did not "confer such an important procedural safeguard upon claimants that an ALJ's failure to rate the B criteria will rarely be harmless." *Id.* at 656. And while the Court acknowledged that "in some

8

cases, it may be difficult, or even impossible, to assess whether an ALJ's failure to rate the B criteria was harmless," the record in *Rabbers* indicated that the only evidence to support a conclusion that the claimant did meet the B criteria was an opinion of a treating physician, which had been properly excluded by the ALJ. *Id.* at 659–60. And the other evidence in the record affirmatively demonstrated that the claimant did not meet any of the B criteria. *See id.* at 659. Therefore, while the ALJ had erred in not applying the special technique, the error was harmless and the Court affirmed the ALJ's denial of benefits.

In *Rabbers*, the Sixth Circuit warned that it may be difficult or impossible to determine whether an error is harmless when the record contains "conflicting or inconclusive evidence" not resolved by the ALJ or "evidence favorable to the claimant that the ALJ simply failed to acknowledge or consider." 582 F.3d at 657–68; *see, e.g.*, *Taylor v. Comm'r Soc. Sec. Admin.*, No. 12-cv-12855, 2013 WL 5348818, at *18 (Michelson, M.J.) ("Here, the Court believes that the record contains conflicting or inconclusive evidence relating to the B criteria such that the ALJ, rather than this court, should be the first to explain how the record, taken as a whole, does (or does not) support 'moderate' limitations in activities of daily living, social functioning, and concentration, persistence, or pace." (citing *Rabbers*, 582 F.3d at 657)), *report and recommendation adopted*, 2013 WL 5348818 (E.D. Mich. Sept. 24, 2013) (Tarnow, J.). Furthermore, in performing review for harmless error, the Court "will not shift from its primary role as a reviewer of fact nor find an ALJ's procedural error harmless merely because substantial evidence exists in the record that could uphold the ALJ's decision." *M.G. v. Comm'r of Soc. Sec.*, 861 F.Supp. 2d 846, 860 (Michelson, M.J.), *report and recommendation adopted*, 861 F. Supp. at 847 (E.D. Mich. 2012) (Goldsmith, J.). Thus, applied here, "the harmless error inquiry turns on whether the ALJ *would have* reached the same conclusions," *id.* (quoting *Juarez v.*

9

*Astrue*, No. 2:09-cv-160, 2010 WL 743739, at *5–6 (Lee, M.J.), *report and recommendation adopted*, 2010 WL 743739 (E.D. Tenn. Mar. 1, 2010) (Mattice, J.), at Step Three had there been a medical opinion on the combination of Bukowski's psychiatric and physical impairments.

Here, Magistrate Judge Whalen found that Dr. Wayne Hill's evaluation of Plaintiff supported the ALJ's determination regarding equivalence for psychiatric impairments, but that Dr. Hill's evaluation may not have extended to equivalence for physical impairments. (R&R at 16.) Judge Whalen advised that although the Single Decision Maker ("SDM") Janet Grimm "may have impliedly found that Plaintiff's physical conditions did not medically equal a listed impairment, her findings do not constitute opinion evidence . . . ." (*Id.* at 17.) Nonetheless, Judge Whalen recommended that this Court grant the Commissioner's motion for summary judgment either because Dr. Hill might have incorporated Grimm's findings into his own analysis or because of "the dearth of evidence suggesting that the [Plaintiff's] physical conditions (combined with the mental) equaled a listed impairment." (R&R at 17.)

The Court agrees with the Magistrate Judge that Hill's signed Psychiatric Review Technique form, included as part of Bukowski's Disability Determination, constitutes a medical opinion on equivalence for Bukowski's psychiatric impairments. (*See* Tr. 304). The Court cannot find, however, that Hill considered Bukowski's physical impairments either directly or by adopting Grimm's findings. (Tr. 304). First, nothing in the form signed by Hill indicates that he considered Bukowski's physical impairments, or the combination of her physical and mental impairments. (*See* Tr. 300–19.) And although the Magistrate Judge suggested that Hill might have incorporated Grimm's analysis (*see* R&R at 17), that is not possible because Hill's psychiatric assessment is dated August 31, 2010, while Grimm's physical assessment is dated September 1, 2010. (*Id.* at 303–304.) And Grimm, who did opine on equivalence, was only a

10

non-expert SDM, so her findings do not constitute a medical opinion. It was error for the ALJ to make equivalency findings on Bukowski's combined impairments absent a medical opinion on the matter. The Court will not adopt the Report's contrary finding.

But the Court does agree with the Magistrate Judge's alternate finding: that any error was ultimately harmless given Plaintiff's failure to adduce evidence that the physical impairments had any effect on her psychiatric impairments and her admission that her psychiatric impairments were the basis for her disability. (R&R at 17–18.)

As noted above, it is Bukowski's burden on Step Three equivalence to present "specific medical findings that [her] impairment meets the applicable impairment or present medical evidence that describes how [her] impairment is equivalent to a listed impairment." *Lusk v. Comm'r of Soc. Sec.*, 106 F. App'x 405, 411 (6th Cir. 2004). But the record and the ALJ's decision reflect that Bukowski did not present such evidence. In fact, the record shows that Bukowski's physical impairments, although found to be severe on Step Two, did not rise to the level of equivalence to a Listed Impairment. Nor does the record contain any evidence of interaction between the psychiatric and physical impairments.

First, Bukowski argues that her impairments were equivalent to Listed Impairment 6.02 for kidney impairments, (Pl.'s Obj. at 4), a listing that the ALJ considered on Step Three, (Tr. 23). That listing provides:

> Impairment of renal function, due to any chronic renal disease that has lasted or can be expected to last for a continuous period of at least 12 months. With:
>
>     A. Chronic hemodialysis or peritoneal dialysis (see 6.00E1)
>
>     or
>
>     B. Kidney transplantation. . . .
>
>     or

11

> C. Persistent elevation of serum creatinine to 4 mg per deciliter (dL) (100 ml) or greater or reduction of creatinine clearance to 20 ml per minute or less, over at least 3 months, with at least one of the following: [listing renal osteodystrophy, persistent motor or sensory neuropathy, persistent fluid overload syndrome with accompanying conditions, or persistent anorexia.]

20 C.F.R. 404, Subpart P, App. 1 § 6.02. There is no evidence in the record indicating that Bukowski underwent a kidney transplant. There is no evidence of dialysis. And all the test results for creatinine levels in the record are between two and three mg/dL. (*See* Tr. 288–90.) Given this evidence it would be virtually impossible for Bukowski to meet Listing 6.02, a conclusion the ALJ also reached in his opinion (*see* Tr. at 23).

Most importantly, Bukowski herself advised the ALJ that her kidney disease was not the primary basis of her disability claim, even where the ALJ acknowledged that he would consider the kidney disease in combination with her psychiatric impairments. (*See* Tr. 41–43.) The ALJ granted Bukowski's attorney's request to keep the record open for any additional documentation of the kidney disease, but the only additional submission came eight months after the ALJ's decision and pertains to Bukowski's mental health. (*Id.* at 397.) Moreover, as stated in the Report, the record indicates that Bukowski did not have any functional limitations resulting from the kidney condition and that the condition remained largely asymptomatic throughout the alleged disability period. (Tr. at 327–29, 366, 380, 397; R&R at 17–18.)

Bukowski next argues that there is no medical opinion on whether her combined physical and psychiatric impairments met Listed Impairment 12.05(c) for intellectual impairments. (Pl.'s Obj. at 4.) That listing provides:

> Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

> . . .
>
> (C) A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

Dr. Hill's assessment indicates that Bukowski's IQ score is 74 (Tr. 300), a fact that the ALJ relied upon in making his 12.05(c) determination (Tr. 25). Thus, although Dr. Hill did not make findings on whether Bukowski's psychiatric impairments were equivalent to Listed Impairment 12.05(c), the ALJ was equipped to exclude equivalence on the basis of objective evidence understandable to lay person. In her Motion for Summary Judgment, Bukowski argued that "advanced kidney disease likely to need dialysis or a kidney transplant in the near future would equal in severity four points in the IQ score." (Pl.'s Mot. at 9.) But Bukowski has not reasserted this argument in her objections and therefore it is arguably waived. *See Arn*, 474 U.S. at 149–52. In any event, the Court notes that the regulation precludes Plaintiff's argument because it requires that the IQ be "manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. 404, Subpart P, App. 1 § 12.05. Bukowski was already 22 when Dr. Hill assessed her IQ at 74. (Tr. 31.) And although Bukowski might still argue that this aspect of the regulation can be overlooked when determining equivalency in combination, the administrative record indicates that Bukowski has been able to perform normal functions such as working part time, performing household chores, and caring for her daughter, and she admits that her kidney function does not preclude these tasks. (Tr. 265–67.)

While the failure to obtain an expert opinion on the issue of medical equivalence will often require remand, *see Moran*, 2014 WL 4197366, at *25 (citing cases that were remanded for a medical opinion on equivalence), the administrative record in this case is neither inconclusive

nor contradictory, and by all indications, remand for further medical opinion would yield the same conclusions already reached by the ALJ. Therefore, the Court finds that the absence of a medical opinion on the combined effects of Plaintiff's physical and psychiatric impairments is harmless.

## IV. CONCLUSION

The ALJ's articulation of his findings on Step Three was sufficient to facilitate meaningful judicial review, and any error stemming from the lack of a medical opinion as to the combination of Bukowski's psychiatric and physical impairments is harmless because Bukowski did not meet her burden to present evidence that the combined effects were equivalent to any Listed Impairment. Accordingly, the Court **OVERRULES** Bukowski's objections and **ADOPTS IN PART** Magistrate Judge Whalen's Report and Recommendation.

**IT IS SO ORDERED.**

                                      s/Laurie J. Michelson
                                      LAURIE J. MICHELSON
                                      UNITED STATES DISTRICT JUDGE

Dated: September 26, 2014

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on September 26, 2014.

                                      s/Jane Johnson
                                      Case Manager to
                                      Honorable Laurie J. Michelson